IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>KYLE GEARY,<br><br>    Defendant. | Case No. CR09-2023<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
  A. *Did the Vehicle Stop Violate the Fourth Amendment?*. . . . . . . . . . . 5
  B. *Was Defendant Questioned in Violation of the Fifth Amendment?*. . . . 7
  C. *Was the Traffic Stop "Unduly Prolonged?"*. . . . . . . . . . . . . . . . 8

VI. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

On the 19th day of February 2010, this matter came on for hearing on the Motion to Suppress (docket number 193) filed by Defendant Kyle Geary on February 10, 2010. The Government was represented by Assistant United States Attorney Patrick J. Reinert. Defendant Kyle Geary appeared personally and was represented by his attorney, Webb L. Wassmer.

## II. PROCEDURAL HISTORY

On August 24, 2009, Defendant Kyle Geary was charged by Indictment (docket number 19) with ten other defendants. Geary was charged in Count 1 of the Indictment with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Defendant was arrested in Arizona and did not have an initial appearance and arraignment in this district until January 14, 2010.[1] Defendant entered a plea of not guilty and trial was scheduled for March 15, 2010.

The Government then filed a motion to consolidate Defendant's trial with that of his co-Defendants. Defendant did not resist. The trial was rescheduled on April 5, 2010, with the pretrial deadlines modified accordingly. On February 10, 2010, Defendant timely filed the instant motion to suppress.

## III. ISSUE PRESENTED

Defendant asks that all evidence deriving from a traffic stop in Arizona on August 21, 2009 be suppressed. Specifically, Defendant argues that (1) the stop was pretextual and in violation of the Fourth Amendment, (2) Defendant was questioned after he invoked his right to remain silent in violation of the Fifth Amendment, and (3) the traffic stop was "unduly prolonged" in violation of the Fourth Amendment.

## IV. RELEVANT FACTS

At approximately 1:37 p.m. on August 21, 2009, Defendant was stopped in Arizona while driving on Interstate 40. Trooper James G. Burton of the Arizona Department of Public Safety testified regarding the circumstances surrounding the stop. According to Trooper Burton, he was sitting in the median of I-40 when he saw Defendant's vehicle drive by. Burton observed what appeared to be a "navigation system" mounted on the windshield of the vehicle, approximately ten inches below the rearview mirror. The driver and passenger were "leaning back in the seat" and looking straight ahead, and the vehicle

---

[1] Defendant's return to this district was apparently delayed by State charges brought in Arizona.

braked as it approached the patrol car, which Burton opined were "indicators of criminal activity."

Trooper Burton then initiated a traffic stop for having an object affixed to the vehicle in a manner that reduced the driver's view through the windshield.[2] After the vehicle stopped, Burton approached on the passenger side. Burton advised the driver, who turned out to be Defendant Kyle Geary, of the reason for the stop. Burton asked Defendant for his "paperwork" and was provided with an Iowa driver's license and car rental agreement.

According to Trooper Burton, Defendant was "visibly nervous." Defendant's hands were shaking when he provided the documents, and Burton observed a "carotid pulse" in Defendant's neck. The passenger in Defendant's car was also "visibly nervous" and had a freshly lit cigarette. Burton observed "several energy drinks" in the back of the vehicle.

Trooper Burton asked Defendant to come back to the patrol car, and Defendant complied. Standing outside the patrol car, Burton asked Defendant about his trip.[3] Defendant told Burton that they had traveled from Iowa to Phoenix in order to do some sightseeing. They had arrived in Phoenix "yesterday afternoon," but were already heading home. Trooper Burton advised Defendant that he was going to give him a warning for the windshield violation. While writing the warning, Burton asked additional questions. Defendant said he had rented the car in Iowa two days earlier, on August 19. They had driven all night to arrive in Phoenix during the afternoon of August 20. Defendant could

---

[2] Arizona Revised Statutes section 28-959.01(B) provides:
> Except as otherwise provided in this section, a person shall not operate a motor vehicle with an object or material placed, displayed, installed, affixed or applied on the windshield or side or rear windows or with an object or material placed, displayed, installed, affixed or applied in or on the motor vehicle in a manner that obstructs or reduces a driver's clear view through the windshield or side or rear windows.

[3] The stop was video recorded and a DVD was introduced at the hearing as Government's Exhibit 1.

not state the name of the motel where they stayed the previous night (August 20), nor did he have any receipt.

Four minutes into the stop, Trooper Burton went back to the car and talked to the passenger. The passenger told Burton that they had gone to Phoenix to visit the passenger's sister who had just had a baby, and they were now heading home. The passenger also could not identify the motel in which they stayed. When Burton returned to the patrol car, he asked Defendant whether he knew anybody in Phoenix, and whether his passenger knew anybody in Phoenix. Defendant responded no to both questions.

Six minutes into the stop, Trooper Burton again advised Defendant that he would receive a warning on the windshield violation. Burton then radioed in Defendant's identification and received a response one minute later. Burton then called his sergeant (approximately eight minutes into the stop) and told him "I may need you in a minute." In response to additional questions, Defendant told Burton that they had eaten at Arby's the previous evening. Defendant said they had just "driven around" and did not visit any specific sites. When asked why they had driven from Iowa to Arizona – arriving the prior afternoon – and were now heading home, Defendant said that he had been planning to stay longer but had received a call from his girlfriend and her son was sick.

Trooper Burton then went back to the car (approximately 11 minutes into the stop) to get the VIN number to place on the warning ticket. Burton also stopped to ask the passenger his sister's baby's name and where they had dinner the prior evening. The passenger said they had dinner the prior evening at a chicken restaurant.

Approximately 12 minutes into the stop, Trooper Burton gave Defendant the "warning/equipment repair order" (Defendant's Exhibit A) and told him to "drive safe." Defendant started to walk back to his car, but Burton called out asking "Do you mind if I ask you some questions?" Defendant responded that he would "prefer to get back on the road if I could." Defendant admitted that "I'm not too cop friendly." Burton explained that I-40 is often used to transport "illegal contraband," such as guns and drugs, and asked Defendant if he could search the car. Defendant refused. Burton then told Defendant that

4

they were "making a strange trip" and had given inconsistent stories about what they were doing.

Trooper Burton then advised Defendant that he would "probably" call a K-9 unit to the scene. Defendant then said that "I'll be up front and honest with you" and admitted that there were two marijuana blunts located near the driver's seat. That admission came approximately 14 minutes into the stop. After a second officer arrived at the scene, the vehicle was searched and two marijuana blunts were found in the console next to the driver's seat. Both Defendant and the passenger were then put in handcuffs and placed in the squad car. A further search of the vehicle resulted in the seizure of four bundles containing approximately 3.75 pounds of methamphetamine.

## V. DISCUSSION

Defendant asserts three grounds in support of his motion to suppress: First, Defendant argues that the vehicle stop was without probable cause and violative of the Fourth Amendment; second, Defendant argues that the officer impermissibly continued to question him after he asserted his right to remain silent, in violation of the Fifth Amendment; and third, Defendant argues that the traffic stop was unduly prolonged, in violation of the Fourth Amendment.

### A. Did the Vehicle Stop Violate the Fourth Amendment?

The Fourth Amendment protects persons "against unreasonable searches and seizures." U.S. CONST. amend. IV. "A traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment." *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004). A law enforcement officer may make an investigatory stop if he has a "reasonable and articulable suspicion of criminal activity." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 25-31 (1968)).

When a law enforcement officer observes even a minor traffic violation, the officer has probable cause to conduct a traffic stop. *United States v. Sallis*, 507 F.3d 646, 649 (8th Cir. 2007); *See also United States v. Coney*, 456 F.3d 850, 855-56 (8th Cir. 2006) ("An officer has probable cause to conduct a traffic stop when he [or she] observes even

a minor traffic violation."); *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003) ("An officer who observes a traffic violation, even a minor one, has probable cause to initiate a traffic stop.").

Here, Trooper Burton observed a "navigation system" attached to the windshield, approximately ten inches below the rearview mirror. Burton testified that the rectangular object measured four inches by five inches. An Arizona statute makes it unlawful to affix or apply any object on the windshield that "reduces a driver's clear view through the windshield." It is reasonable to assume that a 20 square inch device placed in the middle of the windshield "reduces a driver's clear view." Accordingly, Burton had probable cause to stop the vehicle for a violation of Arizona Revised Statutes section 28-959.01(B).[4]

The only case cited by Defendant on this issue is *People v. Mott*, 906 N.E.2d 159 (Ill. App. 2009). There, the defendant had an air freshener – measuring three-and one-half inches to four inches wide and four to five inches tall – hanging one inch below the rearview mirror. A deputy stopped the defendant's car, believing that the air freshener constituted a "material obstruction of the driver's view out of her front windshield."[5] The Illinois Appellate Court for the Fourth District concluded that the officer lacked reasonable suspicion to stop the defendant for a material obstruction of her front windshield. In reaching that conclusion, however, the Court noted that other states take a different "approach" than does Illinois. While Illinois criminalizes the placement of objects that "materially obstruct" the driver's vision, other states – including Arizona – apply a second approach that criminalizes the placement of objects that "obstruct" or "obstruct or impair" the driver's vision. "The obstruction requirement is a low threshold that requires the officer to testify credibly he believed the object was in the driver's line of vision." *Id.*

---

[4] Trooper Burton testified that when he was working the day shift on the Interstate, he would make three to five stops each week for that reason.

[5] 625 Ill. Stat. § 5/12-503(c) provides:
   No person shall drive a motor vehicle with any objects placed or suspended between the driver and the front windshield, rear window, side wings or side windows immediately adjacent to each side of the driver which materially obstructs the driver's view.

6

at 546. Accordingly, *Mott* is inapposite. *Compare United States v. Yer Yang*, 2009 WL 4729019 (D. Neb. 2009).

In Arizona, it is illegal to affix an object on the windshield that "*reduces* a driver's clear view through the windshield." (emphasis added) Unlike Illinois, it is not necessary that the object "materially obstruct" the driver's vision. Trooper Burton had probable cause to believe that Defendant was violating Arizona law. "Probable cause that a driver has committed any traffic violation, no matter how minor, provides sufficient justification under the Fourth Amendment to stop a vehicle." *Sherbrooke v. City of Pelican Rapids*, 513 F.3d 809, 813 (8th Cir. 2008). While Defendant claims that the stop was "pretextual," the officer's subjective motivation is irrelevant. *Id.*

### B. Was Defendant Questioned in Violation of the Fifth Amendment?

Next, Defendant argues that Trooper Burton continued to question him after he "invoked his right to remain silent," in violation the Fifth Amendment. The basis for Defendant's argument is unclear to the Court. Neither Defendant's motion nor his brief specify when Defendant allegedly "invoked his right to remain silent and to not further answer questions." Defendant's brief on this issue consists almost entirely of an extended excerpt from *United States v. Sawyer*, 588 F.3d 548 (8th Cir. 2009). From the Court's review, however, *Sawyer* would not seem to have any application to the facts in this case.

Apparently, Defendant argues that Trooper Burton's questioning violated his *Miranda* rights.[6] A *Miranda* warning is only required when a suspect is in custody. *Miranda* warnings are not required for roadside questioning of a motorist detained pursuant to a routine traffic stop. *Berkemer v. McCarty*, 468 U.S. 420 (1984). *See also United States v. Morse*, 569 F.3d 882, 884 (8th Cir. 2009) (*Miranda* warnings were not required when the defendant was asked only a "modest number of questions," including whether he had drugs in his pocket).

Here, Defendant was "not subjected to the functional equivalent of a formal arrest" when being questioned by Trooper Burton and, therefore, was not entitled to the

---

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

7

protections of *Miranda*. *United States v. Martin*, 411 F.3d 998, 1003 (8th Cir. 2005). Defendant was not placed in custody until after the marijuana was recovered from the vehicle. Furthermore, there is no evidence that Defendant "invoked his right to remain silent" or refused to answer further questions. Simply put, *Miranda* has no application here.

### C. Was the Traffic Stop "Unduly Prolonged?"

Finally, Defendant argues that Trooper Burton "unduly prolonged the traffic stop by asking questions unrelated to the reason for the stop." This issue is one that is frequently litigated. In his brief, Defendant cites a concise summary of the law in this area, as set forth in *United States v. Peralez*:

> A constitutionally permissible traffic stop can become unlawful, however, "if it is prolonged beyond the time reasonably required to complete" its purpose. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). During a traffic stop, an officer may detain the occupants of the vehicle "while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 647 (8th Cir.1999). The tasks include "asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir.2005) (internal quotation omitted). An officer may ask passengers these questions. *See United States v. Coney*, 456 F.3d 850, 857 (8th Cir.2006). If complications arise during these routine tasks, the vehicle may reasonably be detained "for a longer duration than when a stop is strictly routine." *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir.2007). Whether a traffic stop "is reasonable in length is a fact intensive question, and there is no per se time limit on all traffic stops."

*United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008).

Defendant urges that the facts in this case are similar to the facts in *Peralez*, where the Eighth Circuit Court of Appeals concluded that the stop had been unconstitutionally extended. The Court in *Peralez* recognized, however, that there are two instances "when

8

an officer may extend or expand the scope of a traffic stop beyond the original justification for the stop." *Id.* at 1120. The first is "if the encounter becomes consensual." Here, Defendant told Trooper Burton that he would "prefer to get back on the road if I could," and it cannot be said that the extension was consensual. The second instance which allows an officer to extend or expand the scope of the traffic stop, however, is "if the officer develops reasonable suspicion that other criminal activity is afoot." *Id.* In *Peralez*, the Government did not contend that the officer had reasonable suspicion that the van's occupants were engaged in illegal activities when the trooper began asking drug interdiction questions. The instant case is easily distinguishable.

Here, Defendant was visibly nervous when Trooper Burton initially approached the vehicle. Defendant's hands were shaking when he provided documents, and Burton observed a "carotid pulse" in Defendant's neck. As permitted by *Peralez*, Burton asked Defendant routine questions "about his destination and purpose." Defendant told Burton that he and his passenger had driven day and night to travel to Phoenix and – less than 24 hours later – were heading home. According to Defendant, they had driven to Arizona to "do some sightseeing," but had simply "driven around" the prior day and did not visit any specific attraction. Neither Defendant nor his passenger could recall the motel where they had stayed the previous night. The passenger told Burton that they had visited his sister (who had just had a baby), but Defendant said neither he nor his passenger knew anyone in the Phoenix area. Based upon Defendant's nervousness, the vagueness of his answers, the inconsistencies between his story and his passenger's story, and the short duration of the trip, Burton had a reasonable suspicion that other criminal activity may be afoot.

The facts in this case are more nearly akin to those found in *United States v. Suitt*, 569 F.3d 867 (8th Cir. 2009). There, a deputy sheriff stopped defendant's vehicle for an expired registration. Three minutes into the stop, the deputy told the defendant that he was going to issue a warning ticket. While writing the warning ticket, the deputy began asking the defendant routine questions about his trip. The defendant's answers were vague and

the deputy observed that the defendant "appeared nervous and fidgety." *Id.* at 869. Thirteen minutes into the stop, the deputy gave the defendant a warning ticket and returned his driver's license. As the defendant was walking away, however, the deputy asked the defendant "whether he had 'half a minute' to answer a few final questions." *Id.* In response to a question, the defendant denied that he had anything illegal in the vehicle. The deputy then asked for permission to search the vehicle and the defendant refused, saying that he was "on a tight schedule." The deputy was a K-9 officer and he then decided to walk his drug dog around the defendant's vehicle. After the dog alerted to the vehicle, the deputy searched the bed of the truck and found a large amount of marijuana.

After discussing *Peralez* at length, the Court concluded that the officer did not unreasonably prolong the stop.[7] The Court noted important factual distinctions between the two cases:

> [T]here are important factual distinctions between this case and *Peralez* that dissuade us from applying its reasoning here. Until the end of the encounter, Deputy Faiferlick did not ask drug interdiction questions like the officer in *Peralez*, but routine questions about Suitt's travel plans. The Supreme Court has rejected the notion that the Fourth Amendment prohibits questioning unrelated to the purpose of the original detention, provided that such questioning does not prolong the stop. (citation omitted) Nonetheless, whether questioning is related or unrelated to the purpose of a detention is relevant to deciding whether the detention was unnecessarily prolonged. After deciding to issue a warning and without any basis for suspecting that criminal activity was afoot, the officer in *Peralez* proceeded to question the suspects about the presence of guns, drugs, and other illegal activity. Such questioning could not plausibly be related to the purpose of the detention, and therefore it was an impermissible basis on which to "more than double the time Peralez was detained." Here, seconds after announcing his intention to let Suitt go with a warning, Deputy Faiferlick asked Suitt about his travel plans as he was writing the warning ticket. It would be arbitrary to the point

---

[7] The *Suitt* Court initially noted that the *Peralez* Court's statements concerning the unlawfully extended stop in *Peralez* were "non-binding dicta." *Suitt*, 569 F.3d at 871.

10

of pure caprice if routine questions that would have been plainly related to the stop if asked a few seconds before this announcement lost their nexus to, and became an illegitimate basis for continuing, the detention when asked a few seconds later while Deputy Faiferlick engaged in the necessary process of completing the warning ticket.

*Suitt*, 569 F.3d at 871-72.

Furthermore, the Court noted that "there is no indication that the suspects in *Peralez* did or said anything suspicious during the officer's questioning that justified further interrogation." *Id.* Conversely, "Suitt repeatedly gave hesitant, evasive, and incomplete answers to Deputy Faiferlick's questions." *Id.* "Each of Suitt's hesitant responses added piece by piece to Deputy Faiferlick's growing doubts." *Id.*

Similarly, while completing the warning ticket, Trooper Burton posed routine questions regarding Defendant's destination and purpose. The answers given by Defendant and his passenger were vague and inconsistent. The warning ticket was given to Defendant approximately 12 minutes into the stop, and the Court does not believe that the routine questions unreasonably prolonged the stop. After Defendant was given the ticket and told to "drive safe," Burton then posed additional questions relating to drug interdiction. By that time, however, Burton had developed a reasonable suspicion that other criminal activity was afoot. *Peralez*, 526 F.3d at 1120. Therefore, the additional questions and "prolonged stop" were not violative of the Fourth Amendment.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **DENY** the Motion to Suppress (docket number 193) filed by Defendant Kyle Geary on February 10, 2010.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the District Court. ***Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule***

*on the objections."* Accordingly, if Defendant is going to object to this Report and Recommendation, he must promptly order a transcript of the hearing held on February 19, 2010.

DATED this ___22nd___ day of February, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA